1  ROBERT. W. HICKS (CA Bar No. 168049)
   KENNETH R. WRIGHT (CA Bar No. 176325)
2  ROBERT W. HICKS & ASSOCIATES
   501 W. Broadway, Suite 800
3  San Diego, CA 92101
   Phone:  (619) 236-3403
4  Fax:      (619) 236-3413
5
   Attorneys for defendants JOHNNIE M.
6  JOHNSON and BLACK TIE MEDICAL, INC.
7
8                  UNITED STATES DISTRICT COURT
9                SOUTHERN DISTRICT OF CALIFORNIA
10
   TULIP BIOMED, INC.,                )  CASE NO.:  09 CV 0597 W LSP
11                                     )
              Plaintiff,               )
12                                     )  **MEMORANDUM OF POINTS AND**
   vs.                                 )  **AUTHORITIES IN SUPPORT OF**
13                                     )  **MOTION TO DISMISS OR COMPEL**
                                       )  **ARBITRATION**
14 JOHNNIE M. JOHNSON and BLACK        )
   TIE MEDICAL, INC,,                  )  Judge: Hon. Thomas J. Whelan
15                                     )  Courtroom 7
              Defendants,              )  Date: May 26, 2009
16                                     )  MOTION TAKEN UNDER SUBMISSION.
                                       )  NO ORAL ARGUMENT UNDER LOCAL
17                                     )  RULE 7.1(d)(1).
18 _____ )
19
20
21
22
23
24
25
26
27
28

---

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE**
**ALTERNATIVE, COMPEL ARBITRATION**
- i -

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    Introduction . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . 1

II.   Factual And Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  Abstention is Warranted Because the Declaratory Judgment
      Sought in This Case Concerns the Exact Same Issues Which
      the Parties are Already Litigating in Two Other Suits . . . . . . . . . . . . . . . . . . . . . . 6

IV.   Plaintiff Has Failed To Join An Indispensable Party . . . . . . . . . . . . . . . . . . . . . . .10

V.    The Complaint Fails to State a Claim for Either Unfair Competition
      or Misuse Of Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      A.   Misuse of Patent is not a claim – it is an affirmative defense
           to an infringement action, it can only be asserted against a
           patent holder, and the statements on which the claim is based
           are protected communications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      B.   Enforcing patent rights is not unfair competition under federal law . . . . . . . . . . . 16

      C.   Enforcing patent rights is not unfair competition under state law . . . . . . . . . . . . . 17

VI.   Plaintiff's Claims are Subject to an Arbitration Agreement
      and are Currently Being Arbitrated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VII.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

## STATUTES, RULES and REGULATIONS

9 U.S.C. §3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28 U.S.C. §2201(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

35 U.S.C. §256 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

35 U.S.C. §282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 16

35 U.S.C. §271 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

35 U.S.C. §271(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

35 U.S.C. §271(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

35 U.S.C. §271(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

35 U.S.C. §271(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 18

35 U.S.C. §282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

37 C.F.R. §1.32(a) and (b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed Rules Civ. Proc., Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed Rules Civ. Proc., Rule 12(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

Fed Rules Civ. Proc., Rule 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Fed Rules Civ. Proc., Rule 19(a)(1)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Fed Rules Civ. Proc., Rule 19(a)(1)(B)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Fed Rule Civ. Proc., Rule 19(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Fed Rule Civ. Proc., Rule 19(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Bus. & Prof. Code, §17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

Bus. & Prof. Code §17204. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## CASES

American States Ins. Co. v. Kearns, 15 F.3d 142 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . .7

Bank of the West v. Superior Court, 2 Cal.4th 1254 (1992) . . . . . . . . . . . . . . . . . . 17, 18

Baugh v. CBS, Inc., 828 F.Supp. 745 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

1   Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 7, 10

2   Cel-Tech Comms., Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163 (1999) . . . . .18

3   Chamberlain v. Allstate Ins. Co., 931 F.2d 1361 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . .7, 9

4   Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). . . . . . . . . . 9

5   Continental Cas. Co. v. Robsac, 947 F.2d 1367 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . .7

6   Fleet Tire Serv. Of North Little Rock v. Oliver Rubber Co., 118 F3d 619 (8th Cir. 1997) . . . 20

7   First Options of Chicago, Inc. v. Kaplan, 514 US 938 (1995) . . . . . . . . . . . . . . . . . . . . . . . 20

8   First State Ins. Co. v. Callan Assocs., Inc., 113 F.3d 161 (9th Cir. 1997) . . . . . . . . . . . . . . 9

9   Government Employees Ins. Co. v. Dizol, 133 F.3d 1220 (9th Cir. 1998) (en banc) . . . . . 6, 7, 9

10  Hall v. Time Inc., 158 Cal.App.4th 847 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

11  Howes v. Medical Components, Inc., 698 F.Supp. 574 (E.D. Penn. 1988) . . . . . . . . . . . 10-13

12  Kaiser v. Avondale Shipyards, Inc., 677 F2d 1045 (5th Cir. 1982). . . . . . . . . . . . . . . . . . . 14

13  Kasky v. Nike, Inc., 27 Cal.4th 939 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

14  King v. Ames, 179 F.3d 370 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

15  Maryland Cas. Co. v. Knight, 96 F.3d 1284 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . .9

16  Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., 988 F.2d 587 (5th Cir. 1993) . . . . . . . 16

17  People v. Sup.Ct. (Jayhill Corp.), 9 Cal.3d 283 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

18  PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc., 225 F.3d 1315 (Fed. Cir. 2000) . . . 12

19  Polido v. State Farm Mutual Auto. Ins. Co., 110 F.3d. 1418 (9th Cir. 1997) . . . . . . . . . . . . 9

20  Pro-Mold and Tool Co. v. Great Lakes Plastics, Inc., 75 F.3d 1568 (Fed. Cir. 1996) . . . . . . 12

21  Prudential Lines, Inc. v. Exxon Corp., 704 F2d 59 (2nd Cir. 1983) . . . . . . . . . . . . . . . . . . 20

22  Roberts v. Corrothers, 812 F2d 1173 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

23  Shermoen v. United States, 982 F.2d 1312 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . 11

24  Smith v. Montoro, 648 F.2d 602 (9th Cir.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

25  State Farm Fire & Casualty Co. v. Sup. Ct., 45 Cal.App.4th 1093 (1996) . . . . . . . . . . . . .17, 18

26  Stop Youth Addiction, Inc. v. Lucky Stores, Inc. 17 Cal.4th 553, 566 (1998) . . . . . . . . . . . .18

27  United Transp. Union v. So. Calif. Rapid Transit Dist., 7 Cal.App.4th 804 (1992). . . . . . . . 20

28  U.S. Phillips Corp. v. Int'l Trade Comm'n., 424 F.3d 1179 (Fed. Cir. 2005) . . . . . . . . . . . . 14

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE
ALTERNATIVE, COMPEL ARBITRATION**

1    <u>Virginia Panel v. MAC Panel</u>, 133 F.3d 860 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . 14, 15, 16

2    <u>Waterman v. MacKenzie</u>, 138 U.S. 252 (1891) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE
ALTERNATIVE, COMPEL ARBITRATION**

1  ROBERT. W. HICKS (CA Bar No. 168049)
   KENNETH R. WRIGHT (CA Bar No. 176325)
2  ROBERT W. HICKS & ASSOCIATES
   501 W. Broadway, Suite 800
3  San Diego, CA 92101
   Phone:  (619) 236-3403
4  Fax:     (619) 236-3413

5
   Attorneys for defendants JOHNNIE M.
6  JOHNSON and BLACK TIE MEDICAL, INC.

7
                    UNITED STATES DISTRICT COURT
8
                 SOUTHERN DISTRICT OF CALIFORNIA
9

10 TULIP BIOMED, INC.,                )  CASE NO.:  09 CV 0597 W LSP
                                      )
11          Plaintiff,                )
                                      )
12 vs.                                )  **MEMORANDUM OF POINTS AND**
                                      )  **AUTHORITIES IN SUPPORT OF**
13                                    )  **MOTION TO DISMISS OR COMPEL**
                                      )  **ARBITRATION**
14 JOHNNIE M. JOHNSON and BLACK       )
   TIE MEDICAL, INC,,                 )  Judge: Hon. Thomas J. Whelan
15                                    )  Courtroom 7
            Defendants,               )  Date: May 26, 2009
16                                    )  MOTION TAKEN UNDER SUBMISSION.
                                      )  NO ORAL ARGUMENT UNDER LOCAL
17                                    )  RULE 7.1(d)(1).
                                      )
18 _____)

19         Defendants JOHNNIE M. JOHNSON ("Johnson") and BLACK TIE MEDICAL, INC.

20 ("Black Tie") respectfully submit this Memorandum of Points and Authorities in support of

21 their Motion to Dismiss or, in the alternative, to Compel Arbitration as follows:

22                                    **I.**

23                            **INTRODUCTION**

24         This case is the fourth episode in the continuing saga of plaintiff's attempt to avoid

25 paying royalties for its commercial exploitation of defendant Johnson's intellectual property.

26 Episode One is Johnson's suit against plaintiff for breach of a license agreement for the

27 intellectual property, and plaintiff's cross-claim that the intellectual property is invalid and

28 unenforceable.  Episode One is currently pending before Judge David B. Moon, Jr. (Ret.) and

_____
**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE**
**ALTERNATIVE, COMPEL ARBITRATION**

1  the American Arbitration Association pursuant to a commercial arbitration clause in the license

2  agreement (Case No. 73 133 09678 LOKI).  In Episode Two, plaintiff filed an action to

3  invalidate the registration of the trademark "TULIP" before the United States Patent and

4  Trademark Office ("US PTO"), Case No. 92049587, making spurious allegations about the

5  validity of the trademark similar to its claims about the patent in this case.  In Episode Three,

6  which is currently pending in San Diego Superior Court (Case No. 37-2008-00086763-CU-FR-

7  CTL), a member of plaintiff's board of directors sued Johnson claiming he was fraudulently

8  induced to invest in the company by, among other things, Johnson's statements that his patents

9  and trademarks were valuable and enforceable and/or Johnson's failure to disclose the 'facts'

10  on which plaintiff seeks to invalidate the patent in this case.  Plaintiff is a party in that action

11  for obvious reasons.

12        Episode One is set to air on May 26, 2009.  The trial date for Episode Three is August

13  14, 2009.  Episode Two is over.  Johnson moved to dismiss the case for failure to state a claim,

14  the US PTO granted the motion and dismissed the case with prejudice, and the decision is now

15  final.

16        In this case, plaintiff seeks a declaration that one of the patents at issue in the license

17  agreement is invalid and unenforceable because Johnson failed to notify the US PTO of the

18  existence of an earlier patent which plaintiff asserts fully anticipates the patented invention.

19  Plaintiff also claims that the patent is invalid because plaintiff has been able to convince a

20  plastic surgeon whom Johnson consulted with during the refinement of the patented

21  mechanism to claim that Johnson stole his idea.  These same prior art and inventorship claims

22  are central issues in both the Episode One arbitration and the Episode Three suit.  By this

23  motion, defendants request that the Court dismiss this action pursuant to the Brillhart

24  Abstention Doctrine, because the plastic surgeon is a necessary and indispensable party, and

25  because the complaint fails to state a claim for unfair competition.  Alternatively, defendants

26  request that the Court order the case to arbitration pursuant to the arbitration clause in the

27  license agreement.

28  ///

---

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE
ALTERNATIVE, COMPEL ARBITRATION**

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Johnson is an inventor who owns a number of patents and other intellectual property relating to medical devices used primarily in the plastic and cosmetic surgery fields. Black Tie is a corporation in which Johnson owns a 50% interest and for which Johnson works on a full time basis. Black Tie sells *reusable* versions of the devices based on Johnson's patents and technology. Black Tie conducts business as Tulip Medical, and the products are sold under the registered trademark "Tulip."

Plaintiff TULIP BIOMED, INC. ("TBM") is a company formed for the purpose of selling *disposable* versions of the medical devices based on Johnson's patents and intellectual property. Johnson and TBM, then known as Cell-Biosystems, Inc., entered into a license agreement with an effective date of January 1, 2005. The license included any and all rights Johnson held under United States Patent No. 5,002,538 for a "Syringe Adaptor and Method" ("the '538 Patent") and No. 6,569,118 for an "Adaptor and Method of Attachment for 'Luer Lok' Receptacles" ("the '118 Patent"), and other intellectual property owned by Johnson. See Declaration of Robert W. Hicks ("Hicks Dec."), Exh. 1. Johnson had previously licensed the intellectual property to a different corporation owned and controlled by TBM's owners in 2003. The 2005 license agreement occurred after the TBM owners conducted a reverse merger into a public shell, a subsequent business divorce among TBM's owners, and TBM's reorganization as a result of the change in control. Under the 2005 license agreement, TBM received the exclusive right to commercially exploit the patents and technology with the sole exception being Johnson's right to continue to sell *reusable* versions of the devices through Black Tie. Under the license agreement, TBM agreed to pay Johnson a minimum annual royalty of $200,000, payable in monthly installments. The royalties required minimum sales of $1,000, and the license agreement required TBM to maintain this minimum sales figure throughout the life of the license. Hicks Dec., Exh. 1.

On March 1, 2006, Johnson and TBM resolved a dispute concerning the royalties and license terms by executing an "Amendment to the License Agreement." Hicks Dec., Exh. 2.

---

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE ALTERNATIVE, COMPEL ARBITRATION**

1   The amendment clarified the exclusive nature of the license except for the *reusable* business,

2   confirmed the minimum annual royalty requirement, provided for a note from TBM to Johnson

3   in the amount of $191,632, and released all claims including all rights under California Civil

4   Code section 1542. A few months after the execution of the amendment, TBM management

5   approached Johnson, who held a non-dilutable 25% interest in the company, and solicited him

6   to renegotiate the license, release the non-dilutable aspect of his ownership interest in TBM

7   and acquire the *reusable* device business of Black Tie. At the time, TBM was apparently out

8   of money, facing significant obstacles to its efforts to acquire additional financing, including

9   Johnson's anti-dilution interest, and significantly behind in its royalty payments to Johnson.

10  Eventually new management took over and began asserting that Johnson's intellectual property

11  was flawed, that the note was void, that the company had paid royalties even though none were

12  due, and that the company was entitled to continue to commercially exploit the patents without

13  any royalty obligation. See Hicks Dec., Exh. 3. Because TBM was in default and refused to

14  cure, Johnson terminated the license pursuant to the terms of the license agreement. Hicks

15  Dec., Exh. 4.

16          On April 29, 2008, Johnson initiated arbitration before the American Arbitration

17  Association to enforce his rights (AAA Case No. 73 133 9678 LYMC). Hicks Dec., Exh. 5.

18  On June 16, 2008, TBM answered, alleging sixteen affirmative defenses to the Claim. Hicks

19  Dec., Exh. 6. TBM also filed a Counter-Claim for Damages against Johnson, basing its causes

20  of action for fraud, negligent misrepresentation, breach of contract and breach of the covenant

21  of fair dealing, *inter alia,* upon the allegation that Johnson's patents were illegally obtained,

22  improperly maintained, invalid and/or unenforceable. Hicks Dec., Exh. 7. Judge David B.

23  Moon, Jr. (Ret.) was appointed by the parties as the Arbitrator. The arbitration hearing is

24  scheduled for May 26-29 and June 1-2, 2009. The parties have propounded written discovery

25  to one another and numerous depositions have been and continue to be taken in connection

26  with the Arbitration Claim.

27  ///

28  ///

---

1    On January 15, 2009, TBM served verified responses to special interrogatories claiming

2  that the '118 Patent is invalid and unenforceable, that Johnson does not own the right to license

3  the '118 Patent, and that the '118 Patent was or could be rendered invalid because of the

4  statements of Oscar Ramirez MD (that Johnson is not the inventor of the patent).  Hicks Dec.,

5  Exh. 8 (Special Interrogatories and Responses thereto, Nos. 1, 7, 13 & 191).  In early March

6  2009, in response to a document demand served in the Arbitration (and bearing the Arbitration

7  caption along with TBM counsel as "Attorney for Respondent"), TBM provided a copy of the

8  declaration purportedly signed by Oscar Ramirez on December 17,2008, which TBM attached

9  to the Complaint as Exhibit 9.  In the declaration, Ramirez claims that he came up with an idea

10  regarding luer lok cannulas in 1998, communicated the idea to Johnson, and that Johnson used

11  the idea as the basis for the '118 Patent.  Complaint, Exh. 9.  TBM has also claimed that the

12  '118 Patent is fully anticipated by prior art referenced in an International Search Report and

13  not cited to the PTO, rendering the '118 Patent invalid in the arbitration.  (See Exhibit 8,

14  Responses to Special Interrogatories 2 & 3.)   As it does in this case, TBM claims that

15  Johnson's knowing failure to disclose the existence of the prior art to the US PTO invalidates

16  the patent.  On March 13, 2009, TBM served an expert designation in the arbitration

17  identifying Paul T. Clark, an attorney and registered to practice before the US PTO, as an

18  expert to "provide testimony and opinions as to patent validity, processing, effect, value, and

19  patent challenges," presumably directed at these same issues  Hicks Dec., Exh. 9.

20    The validity and enforceability of the '118 Patent is also a central issue in the Superior

21  Court Case, Baldwin v. Johnson (hereinafter the "Director Suit").  In that matter, the director's

22  counsel is parroting TBM's patent invalidity claims and asserting that Johnson's failure to

23  disclose these defects constitutes securities fraud.  The Director's Suit has also seized upon the

24  supposed significance of the Ramirez Declaration for the same reason.  Hicks Dec., Exh. 10

25  (Baldwin's Requests for Admissions, Set Two, numbers 125-136 concerning the International

26  Search Report, and numbers 137-151 concerning the Ramirez Declaration).

27    On March 24, 2009, TBM filed the Complaint for Declaratory Relief initiating this case.

28  As its first cause of action, TBM claims that the '118 Patent is invalid, unenforceable, and void

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE
ALTERNATIVE, COMPEL ARBITRATION

1  in law because Johnson did not inform the US PTO about prior art and because of the Ramirez

2  inventorship claim. Complaint, p. 10. TBM's allegations in this action are the exact same

3  allegations concerning the ownership, validity and enforceability of the '118 Patent which

4  TBM and Johnson are litigating in the Arbitration and in the Director Suit. TBM's second

5  cause of action assumes the validity of the first claim and adds that Johnson's assertion of

6  rights under the "invalid" patent constitutes unfair competition by both Black Tie and Johnson.

7  Complaint, ¶¶ 26-31.

8

9  **III.**

10  **ABSTENTION IS WARRANTED BECAUSE THE DECLARATORY JUDGMENT**

11  **SOUGHT IN THIS CASE CONCERNS THE EXACT SAME ISSUES**

12  **WHICH THE PARTIES ARE ALREADY LITIGATING IN TWO OTHER SUITS**

13

14    In this action, plaintiff seeks a declaratory judgment that the '118 patent is invalid and

15  unenforceable. Complaint, ¶¶ 5-25. The basis for the claim is the alleged failure to disclose

16  the prior art[1] and the Ramirez inventorship claim.[2] <u>Id.</u> Both of these allegations have been

17  asserted by TBM and its director in the arbitration and/or the Director Suit. Hicks Dec., Exhs.

18  7, 8, and 9. In fact, both of the issues will be decided in the arbitration within the next six

19  weeks. Thus, this case is ripe for abstention pursuant to <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S.

20  491, 495 (1942).

21    Jurisdiction under the Declaratory Judgment Act is permissive, not mandatory. 28

22  U.S.C. §2201(a); <u>Government Employees Ins. Co. v. Dizol</u>, 133 F.3d 1220, 1222-23 (9th Cir.

23

24  [1] This allegation is factually false. The US PTO cited the original Vaillancourt patent as prior art in the '118

25  patent, and Johnson directed the US PTO to Vaillancourt's subsequent patent in a reissue application filed on March 6, 2008. Hicks Dec., ¶12.

26  [2] This allegation is also factually false. Despite ample opportunity and knowledge of the patent, Ramirez

27  himself has never asserted any inventorship claim to Johnson or Black Tie, and did not assert this claims until solicited to do so by TBM. In fact, to this day Ramirez has not asserted any inventorship claim to Johnson, and

28  Johnson only learned of the claim through compulsory disclosure of documents from TBM in the arbitration proceeding.

1998) (en banc). Even if a suit passes constitutional and statutory muster, the court must be satisfied that it would be appropriate to entertain the action. Ibid. "The Brillhart factors remain the philosophic touchstone for the district court." Id. at 1225. These include avoiding needless determination of state law issues, discouraging litigants from using declaratory judgment actions as a means of forum shopping, and avoiding duplicative litigation. Id. at 1225-26; Continental Cas. Co. v. Robsac, 947 F.2d 1367, 1371-73 (9th Cir. 1991), overruled on other grounds in Dizol, 133 F.3d at 1227. Additional factors may also be considered, including whether the declaratory action will settle all aspects of the dispute, whether it will serve a useful purpose in clarifying the legal issues, whether it was brought merely as procedural fencing or to obtain a *res judicata* advantage, or whether it will result in entanglement between the federal and state court systems. Id. at 1226, fn. 5, citing American States Ins. Co. v. Kearns, 15 F.3d 142, 145 (9th Cir. 1994).

The existence of parallel state proceedings between the same parties pending at the time the declaratory judgment action is filed creates a presumption that the district court should abstain and let the case proceed in state court. Dizol, 133 F.3d at 1226; Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1366-67 (9th Cir. 1991). The presumption does not require abstention, but the federal courts should generally decline to entertain reactive declaratory actions. Dizol, 133 F.3d at 1226.

This case is a reactionary declaratory relief action. In this suit, plaintiff seeks a judicial declaration resolving issues which are currently pending in two other actions between the same parties. As such, there is a presumption that the court should abstain. Dizol, 133 F.3d at1226; Chamberlain, 931 F.2d at 1366-67.

Even without a presumption this case would warrant abstention. Two of the three main Brillhart factors are plainly implicated. First, the declaratory action is completely unnecessary and duplicative. The issue of the validity and enforceability of the '118 patent will be, at least as between these parties, conclusively resolved in the arbitration in the next six weeks. Secondly, permitting plaintiff to maintain the duplicative declaratory action encourages its blatant act of forum shopping. As explained below, the parties agreed to litigate all issues

---

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE ALTERNATIVE, COMPEL ARBITRATION**

arising out of the subject matter of the license agreement (i.e., the '118 Patent) in arbitration. See Hicks Dec., Exh. 1[3]. Thus, even if there were no pending lawsuits beween the parties, this dispute belongs in arbitration. And the parties are in fact litigating the patent validity issue in arbitration. Hicks Dec., Exhs. 7 and 8. Apparently dissatisfied with its chosen venue, plaintiff filed this action for a declaration on one of the central issues in the arbitration. It would be difficult to imagine a more blatant example of forum shopping.

Moreover, each of the additional considerations counsels toward abstention. First, the declaratory action will not settle all aspects of the dispute between the parties. In addition to the validity of the '118 Patent, the parties are also fighting over past due royalties on other licensed intellectual property, improper cancellation of a note, and other alleged breaches of various obligations between the parties. See Hicks Dec., Exh. 5. In contrast, the arbitration will go a long way to resolving all of the issues raised in the declaratory judgment action as well as the Director Suit, and it will do so in a manner which will be binding on the parties for purposes of all post-termination infringement claims. Second, the declaratory action will not significantly clarify, narrow or resolve the issues in either the arbitration or the Director Suit. Both of these suits are well on their way towards resolution and the issues on which plaintiff seeks a declaratory judgment simply cannot be decided, either by summary judgment or trial, before both preexisting suits are completed. Third, as explained above, this suit is merely a futile effort by plaintiff to avoid its obligation to resolve these issues in arbitration. Whether plaintiff's actual motivation is procedural fencing, forum shopping, or scorched earth litigation, the declaratory judgment action is nothing more than gamesmanship. Lastly, permitting this action to proceed is likely to have a detrimental impact on both the arbitration and the Director Suit because it will create questions concerning the propriety of those judges deciding the patent-related issues. Even though those issues are squarely before the courts in those cases, it

---

[3] Because the court's power to hear the case is at stake, it is not limited to considering the allegations of the complaint. It may consider *extrinsic evidence;* and if the evidence is disputed, it may *weigh* the evidence and *determine* the facts in order to satisfy itself as to its power to hear the case: "(T)he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Roberts v. Corrothers, 812 F2d 1173, 1177 (9th Cir. 1987).

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE ALTERNATIVE, COMPEL ARBITRATION**
- 8 -

1    is highly probable that TBM will attack an adverse ruling or decision by claiming that the

2    patent issues are solely a matter for the federal court to decide. As such, this action creates a

3    high probability for entanglement between the federal and state court systems.

4          Plaintiff's inclusion of Black Tie and the unfair competition claim does not warrant a

5    different conclusion. First, Black Tie is not an appropriate defendant in the

6    invalidity/infringement claim because Black Tie is not the patent holder. Presumably, Black

7    Tie was named as a defendant because Johnson, the patent holder, is not a competitor of TBM

8    for purposes of the unfair competition claim. As explained below, the complaint simply does

9    not assert any viable claims against Black Tie. Black Tie was included merely to create the

10   appearance that the preexisting proceedings are not actually between the same parties, and this

11   effort clearly misses the point. The dispositive question is not whether the pending proceeding

12   is parallel, but rather, whether it provides an available procedural vehicle to resolve the issues

13   raised in the declaratory judgment action. Polido v. State Farm Mutual Auto. Ins. Co., 110

14   F.3d. 1418, 1423 (9th Cir. 1997), overruled on other grounds in Dizol, 133 F.3d at 1227. TBM

15   is asserting these claims in the pending cases, and therefore abstention and dismissal is

16   warranted.

17         Secondly, even a superficial review of the unfair competition claim demonstrates that it

18   is completely dependant upon the declaratory relief claim. Generally, claims that exist

19   independent of the declaration claim are not subject to the discretionary jurisdictional rule. See

20   Maryland Cas. Co. v. Knight, 96 F.3d 1284, 1289 and fn.6 (9th Cir. 1996). Rather, these

21   independent claims invoke the "`virtually unflagging'" obligation hear jurisdictionally

22   sufficient claims. First State Ins. Co. v. Callan Assocs., Inc., 113 F.3d 161, 163 (9th Cir. 1997)

23   (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)).

24   Thus, the appropriate inquiry for a district court in a Declaratory Judgment Act case is to

25   determine whether there are claims that exist independent of any request for declaratory relief,

26   such that they would continue to exist if the request for a declaration was dropped from the

27   case. See Knight, 96 F.3d at 1289; Chamberlain, 931 F.2d at 1367. Here, plaintiff alleges that

28   because the '118 Patent is invalid and unenforceable (i.e., the subject of the requested

---

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE ALTERNATIVE, COMPEL ARBITRATION**

- 9 -

declaration), Johnson's, and by extension Black Tie's, statements that plaintiff's products are infringing on the patent constitute unfair competition. See Complaint, ¶¶ 26-31. Absent a declaration that the '118 patent is invalid and unenforceable, there would be no Misuse of Patent/Unfair Competition claim. In any event and as explained in detail below, the second cause of action does not allege a legally cognizable claim. Consequently, it provides no excuse for TBM's blatant forum shopping.

Plaintiff introduced the question of the validity and enforceability of the patents into the pending suits. Now plaintiff seeks a declaration on the issues in from his court, and has done so in a manner such that the declaration cannot be obtained before the other suits are completed. Had plaintiff sought this remedy in a timely manner, it probably would have ended up in arbitration anyway. The Court should not exercise its discretion to entertain this suit and reward plaintiff's gamesmanship. Accordingly, defendants request that the court abstain in this declaratory judgment action and dismiss the case in light of the other pending suits between the parties. Brillhart, 316 U.S. at 495.

## IV.
## PLAINTIFF HAS FAILED TO JOIN AN INDISPENSABLE PARTY

Traditionally, all patent co-owners were necessary and indispensable parties to an infringement suit. See Waterman v. MacKenzie, 138 U.S. 252 (1891). The question is now governed by Rule 19 of the Federal Rules of Civil Procedure Rule 19. See Howes v. Medical Components, Inc., 698 F.Supp. 574, 576-77 (E.D. Penn. 1988). Resolving a Rule 19 issue is a two stage process. First, it must be determined whether the party is a necessary party who should be joined if feasible pursuant to Rule 19(a). If the party is a necessary party, and if the necessary party cannot be joined voluntarily or involuntarily, then the court must determine if the case can proceed in that party's absence under Rule 19(b). If the case cannot proceed in the absence of the necessary party, that party is indispensable, and the case should be

///

///

1   dismissed. <u>Howes,</u> 698 F. Supp. At 576-577; Fed Rules Civ. Proc. 19.[4]  In deciding a motion

2   to dismiss under Rule 12(b)(7), the court determines for itself whether joinder of the party is

3   possible and if not whether the party is indispensable. <u>Shermoen v. United States</u>, 982 F.2d

4   1312, 1317 (9th Cir. 1992).

5         In this case, plaintiff seeks a declaration that it is not infringing on the '118 patent

6   because it is invalid and unenforceable in part because Oscar Ramirez claims to have come up

7   with the idea on which the patent is based.  In essence, this is a backward infringement claim,

8   and according to plaintiff, Oscar Ramirez is a co-owner of the '118 Patent.  Plaintiff seeks a

9   declaration that involves and potentially resolves the Ramirez inventorship claim, but it has not

10  made Ramirez a party.

11

12  _____

13  [4] Rule 19 provides in pertinent part:
        a) Persons Required to Be Joined if Feasible.
14          (1) Required Party.  A person who is subject to service of process and whose joinder will not deprive
15              the court of subject-matter jurisdiction must be joined as a party if:
                (A) in that person's absence, the court cannot accord complete relief among existing parties; or
16              (B) that person claims an interest relating to the subject of the action and is so situated that
                    disposing of the action in the person's absence may:
17                  (i) as a practical matter impair or impede the person's ability to protect the interest; or
                    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or
18                       otherwise inconsistent obligations because of the interest.
            (2) Joinder by Court Order.  If a person has not been joined as required, the court must order that the
19              person be made a party. A person who refuses to join as a plaintiff may be made either a
20              defendant or, in a proper case, an involuntary plaintiff.
            …
21      b) When Joinder Is Not Feasible.  If a person who is required to be joined if feasible cannot be joined,
            the court must determine whether, in equity and good conscience, the action should proceed among
22          the existing parties or should be dismissed. The factors for the court to consider include:
            (1) the extent to which a judgment rendered in the person's absence might prejudice that person or
23              the existing parties;
            (2) the extent to which any prejudice could be lessened or avoided by:
24              (A) protective provisions in the judgment;
25              (B) shaping the relief; or
                (C) other measures;
26          (3) whether a judgment rendered in the person's absence would be adequate; and
            (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.
27

28

_____

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE
ALTERNATIVE, COMPEL ARBITRATION**

1   Ramirez is a necessary party under Rule 19(a).  Through his declaration, Ramirez

2   claims that he is either the inventor or a co-inventor of the '118 Patent which is the subject of

3   this action.  Complaint, Exh. 9.  As a practical matter, litigating this case to judgment could

4   impair or impede Ramirez' ability to protect his interests.  Fed Rules Civ. Proc., Rule

5   19(a)(1)(B)(i).   If TBM is successful in this case, Ramirez could lose any ability he might

6   have to enforce the rights he claims to have in the '118 Patent for TBM's past and future

7   infringement.  In this action, TBM seeks to avoid liability for infringing on the '118 Patent by

8   asserting Ramirez' inventorship claim in his absence.  However, a good faith inventorship

9   dispute does not insulate a third party from an infringement action.  <u>Pro-Mold and Tool Co. v.</u>

10  <u>Great Lakes Plastics, Inc.</u>, 75 F.3d 1568, 1576 (Fed. Cir. 1996).  Rather, if proven it would

11  give Ramirez an undivided interest in the patent, and the right to recover damages from TBM

12  and anyone else for infringement.  See 35 U.S.C. §256; 37 C.F.R. §1.32(a) and (b).  As such,

13  TBM is in no position to conscientiously advance and protect Ramirez' claim.  In fact, TBM's

14  theory is not co-inventorship, but rather that Johnson mislead the US PTO on the inventorship

15  issue, thereby committing inequitable conduct before the US PTO and rendering the otherwise

16  valid '118 Patent unenforceable by either Johnson or Ramirez.  See <u>PerSeptive Biosystems,</u>

17  <u>Inc. v. Pharmacia Biotech, Inc.</u>, 225 F.3d 1315 (Fed. Cir. 2000).  If TBM prevails on this

18  claim, the decision would have a disastrous impact on Ramirez' ability to enforce the patent

19  rights he claims he is entitled to.  While he would probably not be bound by an adverse

20  decision on the actual inventorship issue in favor of Johnson, he would certainly be prejudiced

21  by a decision on the enforceability issue in favor of the infringer, TBM.  As such, he is a

22  necessary party under Rule 19(a)(1)(B)(i).

23          Ramirez is also a necessary party because Johnson may be prejudiced if the case

24  proceeds to judgment without Ramirez.  If continued without Ramirez, this case leaves

25  Johnson open to a subsequent suit by Ramirez on the same inventorship claim.  It would also

26  subject him to the potential for inconsistent decisions on the inventorship issue.  As such,

27  Ramirez is a necessary party pursuant to Rule19(a)(1)(B(ii).

28

1   Johnson is informed and believes that Ramirez is a resident of Florida and not subject to

2   service of process in California. Johnson also believes that Ramirez will not consent to joinder

3   in this action voluntarily nor is TBM willing or able to join him in this action. As such, joinder

4   by court order appears to be infeasible. Fed Rule Civ. Proc., Rule 19(a)(2).

5   Since Ramirez is a necessary party and his joinder appears to be infeasible absent his

6   consent to jurisdiction, the Court must determine whether, in equity or good conscience, the

7   case can proceed in his absence. Howes, 698 F.Supp. at 577. the factors to be considered

8   include the prejudice which could be suffered by either Ramirez or Johnson, the existence of

9   any protective provisions which might be imposed to lessen or avoid the prejudice, the

10  adequacy of any judgment rendered in Ramirez' absence, and whether TBM would have an

11  adequate remedy if the case is dismissed for failure to join an indispensable party. Ibid. The

12  last factor is easy; TBM is already pursuing its claims against Johnson in the arbitration and the

13  decision on those claims will be binding on both parties. The first and the third factors are

14  closely related, and both suggest that the case should be dismissed. As explained above, both

15  Johnson and Ramirez would be prejudiced by a judgment in favor of TBM, and a judgment in

16  favor of Johnson would not avoid a subsequent action and potential inconsistent verdict on the

17  inventorship claim. Johnson can not imagine any protective provisions which might be added

18  to a judgment short of joining Ramirez in the action which would ameliorate the prejudice that

19  would result if the case proceeds without him. In short, Ramirez is an indispensable party.

20  Fed Rule Civ. Proc., Rule 19(b). Since TBM failed to join him, since involuntary joinder is

21  not feasible, and since TBM has and is actively pursuing another adequate remedy for its

22  claims, this action should be dismissed. Fed. Rules Civ. Proc. Rules 12(b)(7); 19(a)(1)(b)(i).

23

24                                    **V.**

25  ## THE COMPLAINT FAILS TO STATE A CLAIM FOR

26  ## EITHER UNFAIR COMPETITION OR MISUSE OF PATENT

27  As its second cause of action, TBM asserts a claim against Johnson and Black Tie

28  which it identifies as "Misuse of Patent/Unfair Competition". The factual allegations under

---

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE
ALTERNATIVE, COMPEL ARBITRATION**
- 13 -

1   this label assert that Johnson, and presumably Black Tie through Johnson's actions, have

2   inappropriately advised TBM's customers, potential customers and a single vendor that the

3   medical devices TBM continues to market after termination of the license agreement infringe

4   on the '118 Patent.  TBM does not identify any statute granting a private right of action or

5   remedy for this type of conduct, and the label it assigns to this claim sheds little light on the

6   subject.  In fact, the first part of the label, "Misue of Patent", is a defense, not an affirmative

7   claim.  The second part, "Unfair Competition" could refer to very different types of affirmative

8   claims under state and federal laws, but the factual allegations asserted under the confusing

9   label are insufficient as a matter of law to state any claim upon which relief can be granted

10  against either Johnson or Black Tie.  As such, the case should be dismissed.  Fed. Rules Civ.

11  Proc. 12(b)(6).[5]

12  **A.  <u>Misuse of Patent Is Not a Claim – It Is an Affirmative Defense to an Infringement</u>**

13  **<u>Action, It can Only be Asserted Against a Patent Holder, and the Statements on</u>**

14  **<u>Which The Claim is Based are Protected Communications.</u>**

15  Patent misuse involves a claim by a patent infringer that the owner of the patent has

16  impermissibly broadened the physical or temporal scope of the patent grant with

17  anticompetitive effect.  <u>Virginia Panel v. MAC Panel</u>, 133 F.3d 860, 868 (Fed. Cir. 1997).

18  Misuse of a patent is an equitable defense to a claim of patent infringement.  <u>U.S. Phillips</u>

19  <u>Corp. v. Int'l Trade Comm'n.</u>, 424 F.3d 1179, 1184 (Fed. Cir. 2005); <u>Virginia Panel</u>, 133 F.3d

20  at 868.  In other words, patent misuse is a shield, not a sword, and it can only be used by an

21  alleged infringer *if and when* the patent owner seeks to enforce the exclusive right of the patent

22  in a patent infringement suit.

23  Here, no one has sued TBM for infringement, and there are no allegations in this claim

24  that Johnson has expanded the physical or temporal scope of the as-yet uncontested patent.

25  Therefore, as a defense, this claim is premature and the pleading fails to include critical factual

26  _____

27  [5]  In reviewing a Rule 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as

28  well as reasonable inferences to be drawn from them. <u>Kaiser Aluminum & Chem. Sales, Inc. v. Avondale</u>
<u>Shipyards, Inc.</u>, 677 F2d 1045, 1050 (5th Cir. 1982).

1  allegations.  Moreover, by definition the defense of patent misuse applies only to a patent

2  owner.  Since Johnson is the patent owner, TBM cannot state a claim for misuse of a patent

3  against Black Tie.

4      Moreover, the factual allegations which TBM labels as patent misuse are in fact

5  protected communications.  First, it must be recognized that issued patents are presumed to be

6  valid.  35 U.S.C. §282.  Secondly, anyone who "without authority makes, uses, offers to sell,

7  or sells any patented invention . . . infringes the patent."  35 U.S.C. §271(a) [emphasis added]. [6]

8  Third, by statute, a patent owner cannot be found guilty of misuse because he sought to enforce

9  his rights against patent infringement.  35 U.S.C. §271(d)(3);  Virginia Panel, 133 F.3d at 869.

10     The patent holder's protected right to contact third parties' against infringement was

11  discussed at length in Virginia Panel, 133 F.3d 860.  In that case, the alleged infringer claimed

12  that the patent holder had misused the patent by, among other things, sending infringement

---

13

14  [6] 35 USC §271 provides as follows:

15      **(a)** Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells
    any patented invention, within the United States or imports into the United States any patented invention
16      during the term of the patent therefor, infringes the patent.
    **(b)** Whoever actively induces infringement of a patent shall be liable as an infringer.
17      **(c)** Whoever offers to sell or sells within the United States or imports into the United States a component of
    a patented machine, manufacture, combination or composition, or a material or apparatus for use in
18      practicing a patented process, constituting a material part of the invention, knowing the same to be
    especially made or especially adapted for use in an infringement of such patent, and not a staple article or
19      commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory
    infringer.
20      **(d)** No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent
    shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his
21      having done one or more of the following:
        **(1)** derived revenue from acts which if performed by another without his consent would constitute
22          contributory infringement of the patent;
        **(2)** licensed or authorized another to perform acts which if performed without his consent would
23          constitute contributory infringement of the patent;
        **(3)** sought to enforce his patent rights against infringement or contributory infringement;
24          **(4)** refused to license or use any rights to the patent; or
        **(5)** conditioned the license of any rights to the patent or the sale of the patented product on the
25          acquisition of a license to rights in another patent or purchase of a separate product, unless, in view of
    the circumstances, the patent owner has market power in the relevant market for the patent or patented
26      product on which the license or sale is conditioned.

27

28

---

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE
ALTERNATIVE, COMPEL ARBITRATION**

1   notices and cease and desist letters to the infringer's customers.  In addition, the patent holder

2   had threatened to initiate litigation to enforce the patent rights.  The Court found that none of

3   the conduct could constitute patent misuse as a matter of law under Section 271(d)(3).

4   Virginia Panel, 133 F.3d at 869.

5          Here, TBM alleges that Johnson "inform[ed] customers and potential customers of

6   Plaintiff's . . . that Plaintiff's products violate and infringe the '118 Patent" and that "Johnson

7   has contacted the manufacturer of Plaintiff's . . . product and instructed Plaintiff's

8   manufacturer to cease making products for Plaintiff, and to instead provide to Defendant

9   Johnson products that would be made by the manufacturer for Plaintiff."  Complaint, ¶¶ 27 and

10  28.  TBM admits that its authority to practice the '118 Patent it once enjoyed under the license

11  from Johnson has been terminated.  Complaint, ¶12.  As such, both the customers who use the

12  products TBM continues to market after the license termination, and any vendors who continue

13  to manufacture devices for TBM after termination of the license are themselves potential

14  infringers and/or contributory infringers of the presumptively valid '118 Patent.  35 U.S.C.

15  §§271(a), 271(c), and 282.  Johnson has the unfettered legal right to contact these groups and

16  advise them of the fact and consequences of the potential infringement.  35 U.S.C. §271(d).

17         Since the conduct alleged in Count II constitutes statutorily authorized communications,

18  it cannot form the basis for either an affirmative defense or a valid cause of action for misuse

19  of the patent.

20  **B.  Enforcing Patent Rights is not Unfair Competition Under Federal Law**

21         Section 43(a) of the Lanham Act prohibits unfair competition, which is defined to be the

22  use of false designations of origin and false representations in the advertising and sale of goods

23  and services.  Smith v. Montoro, 648 F.2d 602, 603 (9th Cir.1981).  The touchstone of an unfair

24  competition claim is whether the defendant's actions are 'likely to cause confusion' as to source

25  or origin.  Matrix Essentials, Inc. v. Emporium Drug Mart, Inc. of Lafayette, 988 F.2d 587, 592

26  (5th Cir. 1993).  Federal unfair competition principles create a claim for relief against any

27  person who, in connection with any goods, uses in commerce a word, term, name, symbol, a

28  false designation of origin, or a false or misleading description or representation of fact, which

---

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE
ALTERNATIVE, COMPEL ARBITRATION**
- 16 -

1  is likely to deceive or cause confusion or mistake as to the affiliation, connection, or

2  association of such person with another person or as to the origin, sponsorship or approval of

3  his or her goods, services or commercial activities by another person. <u>King v. Ames</u>, 179 F.3d

4  370, 373 (5th Cir. 1999).

5        TBM does not allege that Johnson or Black Tie made and false or deceptive

6  representations concerning the source or origin of their products or TBM's products. Rather,

7  TBM's claim is based on Johnson informing customers, potential customers and a vendor that

8  the products TBM continues to sell after the license was terminated infringe on the '118 Patent.

9  Complaint, paras. 27 and 28. These statements create no confusion about which company

10  made or sold the products, and the statements are not false. As alleged in the Complaint, all of

11  the recipients of Johnson's message of infringement necessarily understood that the products at

12  issue were the products of TBM. As also alleged in the complaint, the Johnson is the patentee

13  of the presumptively valid and as yet uncontested '118 Patent. As such, any statements

14  regarding potential infringement by TBM customers and suppliers would be true as a matter of

15  law. 35 U.S.C. §271. Thus, Count II of the  Complaint fails to state a claim under Federal

16  unfair competition law.

17  **C. <u>Enforcing Patent Rights is not Unfair Competition Under State Law</u>**

18        The Unfair Practices Act, California's basic statute covering unfair business activities, is

19  codified in Business and Professions Code Sections 17200, *et seq*. The California Supreme

20  Court explained that section 17200 "defines 'unfair competition' as any 'unlawful, unfair or

21  fraudulent business practice and unfair, deceptive, untrue or misleading advertising....' (§

22  17200.) The Legislature intended this 'sweeping language' to include "'anything that can

23  properly be called a business practice and that at the same time is forbidden by law.'" <u>Bank of</u>

24  <u>the West v. Superior Court</u>, 2 Cal.4th 1254, 1266-1267 (1992) (citations omitted). Section

25  17200 "borrows" violations of federal, state, or local law and treats them as unlawful practices

26  which are independently actionable under section 17200. <u>State Farm Fire & Casualty Co. v.</u>

27  <u>Superior Court</u>, 45 Cal.App.4th 1093, 1102-03 (1996). Since section 17200 is in the

28  disjunctive, it establishes three separate types of unfair competition. The statute prohibits

---

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE
ALTERNATIVE, COMPEL ARBITRATION**
- 17 -

practices that are either "unfair," or "unlawful," or "fraudulent." (State Farm, 45 Cal.App.4th at 1102.  Since the statements regarding potential infringement alleged in the Complaint were statutorily-authorized and true as a matter of law, any state law unfair competition claim must involve the "unfair" prong of Section 17200.

The fatal flaw in plaintiff's claim is that defendants' otherwise protected communications can not form the basis of an unfair competition action.  As the Supreme Court noted, "the resulting immunity [conferred by some other law] should not evaporate merely because the plaintiff discovers a conveniently different label for pleading what is in substance an identical grievance arising from identical conduct ... " Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 182 (1999); Stop Youth Addiction, Inc. v. Lucky Stores, Inc. (1998) 17 Cal.4th 553, 566 (1998) ("the [Unfair Competition Law] cannot be used to state a cause of action the gist of which is absolutely barred under some other principle of law").  As stated above, Congress specifically allows a patent owner to communicate infringement-related information to third parties, including a competitor's customers. 35 U.S.C. § 271(d)(3).  A section 17200 claim cannot be utilized to overcome that immunity.  Stop Youth Addiction, 17 Cal.4th at 566.

Although the alleged unfair competition must have directly caused the plaintiff to lose money or property in order to confer standing under the Unfair Competition Law, damages for the alleged injury or loss are not recoverable in these types of cases. Hall v. Time Inc., 158 Cal.App.4th 847, 849 (2008); Bank of the West, 2 Cal. 4th at 1266; see also, Bus. & Prof. Code §17204.  A private person's remedies under the unfair competition law are limited to injunctive relief and restitution.  Kasky v. Nike, Inc., 27 Cal.4th 939, 950 (2002).  Like general damage claims, punitive damages remedied are not available under in Section 17200 cases. People v. Sup.Ct. (Jayhill Corp.), 9 Cal.3d 283, 287 (1973).  Attorney fees are also not generally recoverable. Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163, 179 (1999).  In Baugh v. CBS, Inc., 828 F.Supp. 745 (1993), the district court dismissed a claim brought under Section 17200, citing the rule from Bank of the West, 2 Cal.4th at 1266, that damages are not recoverable.  The Baugh court held that if the claim is one for damages, a

Section 17200 claim cannot proceed by disguising it as an action seeking restitution.  In this case, TBM seeks monetary damages, punitive damages, and attorneys fees.  Complaint, p. 10.  Thus, plaintiff must not be asserting a state law unfair competition claim, and if it is, such a claim should be dismissed.  Baugh, 828 F.Supp. at 757–58.

## VI.

### PLAINTIFF'S CLAIMS ARE SUBJECT TO AN ARBITRATION AGREEMENT AND ARE CURRENTLY BEING ARBITRATED

This case belongs in arbitration.  TBM agreed to arbitrate disputes of this nature in the license agreement. Although Black Tie is not a party to the license agreement, to the extent any viable claims remain against Black Tie, the company is willing to submit to arbitration if the other parties are compelled to arbitrate.  Therefore, in the event the claims asserted in this action are not dismissed for the reasons set forth above, defendants request that the matter be stayed and that the parties be ordered to arbitrate these claims pursuant to the arbitration clause in the license agreement.

The Federal Arbitration Act, 9 U.S.C. Sec. 3, provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.   Emphasis supplied.

In section 10.6 of the license agreement, TBM agreed to arbitrate "[a]ny dispute, controversy or claim arising out of or relating to this Agreement, or to the execution, formation, interpretation, performance, breach, termination, validity or enforceability thereof . . . ." Hicks Dec., Exh. 1.  In the present case, TBM asserts two claims, Count I for "Patent Invalidity" and Count II for "Misuse of Patent/Unfair Competition".  Complaint, pp. 2 & 9.

1   TBM can not seriously dispute that the patent invalidity claim is subject to arbitration because

2   TBM has already asserted this claim in the pending arbitration by asserting it as an affirmative

3   defense and seeking affirmative relief in the Counter-Claim.   For all practical purposes, this

4   claim is in arbitration already, and this court need only stay this action pending the outcome off

5   the arbitration.

6       Since the first cause of action is already the subject of the pending arbitration, the only

7   question remaining is whether TBM's second claim in this suit is also subject to mandatory

8   arbitration. In order to determine whether a particular dispute is arbitrable, courts apply

9   ordinary state law contract principles. First Options of Chicago, Inc. v. Kaplan, 514 US 938,

10  944 (1995).  The first consideration is the specific words used in the arbitration agreement. The

11  court must determine (1) whether the clause is broad or narrow; and (2) if the clause is narrow,

12  whether the dispute involves an agreement collateral to the agreement containing the

13  arbitration clause. Prudential Lines, Inc. v. Exxon Corp., 704 F2d 59, 63 (2nd Cir. 1983); Fleet

14  Tire Serv. Of North Little Rock v. Oliver Rubber Co., 118 F3d 619, 621(8th Cir. 1997).  If the

15  clause is "broad," the court should compel arbitration, and permit the arbitrator to decide

16  whether the dispute falls within the clause. Any doubt concerning whether a dispute falls

17  within the scope of an agreement to arbitrate should be resolved by compelling arbitration.

18  United Transp. Union v. So. Calif. Rapid Transit Dist., 7 Cal.App.4[th] 804, 808 (1992).

19      Here, the arbitration clause is broad.  In fact, it utilizes the most common broad form

20  language, "arising out of or relating to this agreement." Fleet Tire, 118 F3d at 620.  As such,

21  the matter should be turned over to the arbitrator to decide the issue of whether the arbitration

22  clause encompasses the unfair competition claim. Prudential Lines, 704 F.2d at 63.  However,

23  the issue is not even a close one.  TBM's unfair competition claim is simply a variant of its

24  claim that it is not required to comply with the license agreement obligation to pay royalties for

25  use of the patents. According to TBM, Johnson and Black Tie are unfairly competing by

26  attempting to enforce and protect their rights under a patent which TBM claims is invalid or

27  unenforceable.  Complaint, p. 9.  This claim necessarily arises out of TBM's commercial

28  exploitation of Johnson's intellectual property which is the subject of the license agreement

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN THE
ALTERNATIVE, COMPEL ARBITRATION**

and the included agreement to arbitrate. If TBM was not making and selling disposable medical devices using the licensed intellectual property, it would not be in competition with Johnson or Black Tie, and it would not be at all concerned with the validity or enforceability of the '118 Patent. As such, the unfair competition claim certainly arises out of and is related to the subject of the license agreement. Consequently, the second claim in this action is also subject to the arbitration clause, and TBM should be compelled to arbitrate this dispute as well.

## VII.

## <u>CONCLUSION</u>

For the reasons stated above, defendants respectfully request that the Court grant the motion to dismiss or, in the alternative, stay this action and order the parties to arbitrate this dispute.

Dated:  April 14, 2009                    ROBERT W. HICKS & ASSOCIATES

Robert W. Hicks
Attorneys for defendants JOHNNIE M.
JOHNSON and BLACK TIE MEDICAL, INC.